## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

MDL No. <u>1:22-P-122</u>

In re:  **THE LITIGATION PRACTICE
GROUP, PC, CREDIT REPAIR
ORGANIZATIONS ACT LITIGATION**

## MOTION OF DEFENDANT THE LITIGATION PRACTICE GROUP, PC TO TRANSFER ACTIONS TO THE SOUTHERN DISTRICT OF OHIO PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

The Litigation Practice Group, PC ("LPG"), pursuant to 28 U.S.C. § 1407(a) and Rule 6.2 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, respectfully requests that this Panel issue an order for transfer and consolidation for the eleven (11) civil actions listed in the Schedule of Actions (the "Actions") filed concurrently herewith.

LPG is a named defendant in ten litigation matters – and a potential defendant in the eleventh matter.  Ten of the eleven pending lawsuits involve allegations arising under the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679, *et seq.*  One matter involves a state law claim under a similar state statute, the Kansas Credit Services Organization Act ("KCSOA"), K.S.A. 50-1116, *et seq.*  Two of the eleven Actions are class actions, containing class definitions which substantially overlap.

For the reasons set forth in the accompanying Memorandum in Support, LPG respectfully submits that it is appropriate and necessary for the Panel to issue an order transferring and consolidating the Actions listed in the accompanying Schedule of Actions, as well as all subsequently filed related actions, to the Southern District of Ohio for coordinated or consolidated pretrial proceedings.

The cases that LPG seeks to coordinate and consolidate include (but may not be limited to) the following:

(1)   *Gloria Eaton, individually and on behalf of all others similarly situated, v. The Litigation Practice Group, PC,* Case No. 1:22-cv-00917-VMC (N.D. Georgia March 4, 2022); ("*Eaton*");

(2)   *Carolyn Beech, on behalf of herself and the class members described below, v. The Litigation Practice Group, PC*, Case No. 1:22-cv-00057-HSO-RHWR, (S.D. Mississippi March 17, 2022) ("*Beech*");

(3)   *Debra Price v. The Litigation Practice Group, PC, Daniel March, Marque Carey, Randall Clark, Michael Robinson, Jayde Trinh, Howard Gutman*, Case No. 3:22-cv-00707-KM (M.D. Pennsylvania May 13, 2022) ("*Price*");[1]

(4)   *Kenneth Topp v. The Litigation Practice Group, PC,* Case No. 6:22-cv-00814 (W.D. Texas July 26, 2022) ("*Beech*");

(5)   *Darcy D. Williamson, Trustee v. Litigation Practice Group PC,* Case No. 22-40216, Adversary No. 22-07015 (Bankruptcy Court, D. Kansas October 3, 2022);

(6)   *James Hammett v. Debt Resolution Direct, LLC, d/b/a Debt Advisors of America Company (involving allegations against The Litigation Practice Group. P.C.),* Case No. 1:22-cv-04249-SDG (N.D. Georgia October 25, 2022) ("*Hammett*");

(7)   *Beverly A. Graham v. The Litigation Practice Group. P.C.*, Case No. 2:22-cv-07915-MAR (C.D. California, October 31, 2022) ("*Graham*");

(8)   *Johnny W. Rizo v. The Litigation Practice Group. P.C.*, Case No. 2:22-cv-01959-DAD-DB (E.D. California, October 31, 2022) ("*Rizo*");

(9)   *Teresa Klaus v. The Litigation Practice Group. P.C.*, Case No. 3:22-cv-02094-JGC (N.D. Ohio November 18, 2022);

(10)   *Kathlene Scarlett v. The Litigation Practice Group. P.C.*, Case No. 2:22-cv-04106-EAS-KAJ (S.D. Ohio November 18, 2022); and

(11)   *Geneva and Myranda Sheffield v. The Litigation Practice Group. P.C.*, Case No. 3:22-cv-02093-JZ (N.D. Ohio November 18, 2022).

---

[1] In a case of legal maneuvering, *Price* moved to dismiss her Complaint on December 2, 2022, to try and avoid a transfer of her case.  After being notified of LPG's intent to move for a transfer and consolidation, *Price* moved to dismiss shortly thereafter.  With the understanding that *Price* likely intends to re-file her complaint, LPG is considering opposing the motion for dismissal.

2

Transfer for pretrial consolidation or coordination is proper and necessary for the following reasons:

1.      LPG is a law firm, organized under California law as a Professional Corporation. LPG's attorney-client relationships with its clients (including the plaintiffs in the Actions) are protected by the attorney-client privilege and/or the attorney work product doctrine.  Because the attorney-client privilege is at issue in the class actions, LPG is at risk of being subjected to inconsistent pretrial rulings concerning the scope of LPG's attorney-client privilege.  This alone is cause for consolidating the Actions into a single district court for consolidated proceedings.

2.      Ten of the eleven Actions allege violations of CROA, and the allegations are nearly identical in each case.  One action alleges violations under a similar state statute.  Ten of the Actions allege that LPG violated CROA when it allegedly received payment for the performance of its services before such services were fully performed.  Five Actions state that LPG violated CROA when it allegedly made untrue statements and did not provide a written statement of rights.  (See *Price*, *Topp*, *Hammett*, *Rizo*, and *Graham*).  Two of the Actions allege that LPG violated CROA when it misrepresented its services.  (See *Price* and *Eaton*).  Five of the Actions allege LPG violated CROA when it failed to provide written disclosures and/or that it did not include certain information in such disclosures.  (See *Beech, Topp, Hammett, Rizo, and Graham*).  Four Actions allege that LPG violated CROA when the documents it provided did not include a cancellation clause. (See *Beech, Topp, Hammett*, and *Graham*).  Three of the Actions allege that LPG violated CROA when it attempted to obtain a waiver of rights from the consumer. (See *Topp, Rizo*, and *Graham*).  One action alleges violations under the Kansas Credit Services Organization Act ("KCSOA"), K.S.A. 50-1116, *et seq*.  Based on these alleged violations, plaintiffs seek injunctive relief, actual damages, punitive damages, and attorney fees and costs.

*Eaton* and *Beech* seek relief for putative nationwide class actions. *Eaton* seeks an ancillary class incentive award.

3.    As demonstrated, ten of the Actions make substantially similar – if not identical – claims regarding alleged violations of CROA. Each of the eleven Actions arises out of similar facts.

4.    Discovery in the Actions will substantially overlap, focusing on LPG's practices and procedures, including but not limited to its relationships with clients, which is protected by the attorney-client privilege. Discovery in each Action will involve many of the same documents and witnesses because each Action arises from the same or similar facts for purposes of determining whether the Actions warrant transfer under Section 1407.

5.    The inherent risk of inconsistent discovery rulings concerning the extent and scope of LPG's attorney-client relationship – and the attorney-client privilege attendant thereto – is justification alone for coordinating and consolidating the Actions.

6.    Plaintiffs in *Beech* seek certification of nationwide classes as follows:

> Class A consists of all persons who, on or after a date five years prior to the filing of this action entered into contracts with Defendant LPG, which contracts were not cancelled within three business days, that provide for monthly payments before services are fully performed.

*Beech* Complaint at ¶47.

> Class B consists of all persons who, on or after a date five years prior to the filing of this action entered into contracts with Defendant LPG, which contracts were not cancelled within three business days, and who were not provided with the written statement described in 15 U.S.C. §1679c(a).

*Beech* Complaint at ¶48.

> Class C consists of all persons who, on or after a date five years prior to the filing of this action entered into contracts with Defendant

LPG, which contracts were not cancelled within three business days, and who were not provided with both (a) a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows "You may cancel this contract without any penalty or obligation at any time before midnight of the 3rd business day after the date on which you singed the contract. See the attached notice of cancellation form for an explanation of this right" and (b) a separate notice of cancellation form.

*Beech* Complaint at ¶49.

7.     Plaintiffs in *Eaton* seek certification of nationwide classes:

**Class 1 (Debt Adjustment Class)**: All persons who, while residing in the state of Georgia, received debt settlement or debt adjusting services from Defendant on or after July 1, 2003 and from whom Defendant accepted, directly or indirectly, any charge, fee, contribution, or combination thereof, in violation of the Georgia Debt Adjustment Act.

**Class 2 (CROA Class)**: All persons who, while residing in the state of Georgia, received credit repair services from Defendant on or after five (5) years from the filing of this Complaint through the current time.

**Class 3 (FBPA Class)**: All persons who, while residing in the state of Georgia, received debt settlement or debt adjusting services from Defendant on or after on or after four (4) years from the filing of this Complaint through the current time and from whom Defendant accepted, directly or indirectly, any charge, fee, contribution, or combination thereof, in violation of the Georgia Debt Adjustment Act, which also constitutes a violation of the Georgia Fair Business Practices Act.

**Class 4 (Money Had and Received Class)**: All persons who, while residing in the state of Georgia, paid money to Defendant on or after on or after four (4) years from the filing of this Complaint through the current time for Defendant's commission of the tort of money had and received.

**Class 5 (Restitution Class)**: All persons who, while residing in the state of Georgia, paid money to Defendant on or after four (4) years from the filing of this Complaint through the current time for services promised under an illegal contract, and such persons seek restitution from Defendant.

> **Sub-Classes 6-10 (Elder Abuse):** Within each of the five separate proposed classes exists an additional and distinct subclass for purposes of Count Six for all members over the age of 60.

*Eaton* Complaint at ¶ 159.

8.     Thus, the proposed CROA subclasses in *Beech* will substantially, if not completely, overlap with the proposed CROA class in *Eaton*. The same discovery that will be relevant in the two putative nationwide class actions will be relevant to the other Actions as well.

9.     Accordingly, transferring these Actions to one district will ensure the just and efficient conduct of the litigation and is necessary to avoid overlapping classes, duplicative discovery obligations, and the possibility of conflicting pre-trial rulings. The risk and prejudice of inconsistent rulings on the issue of attorney-client privilege is significant. For example, the possibility exists that two different District Courts will issue vastly different rulings concerning the scope of the attorney-client privilege maintained by LPG.

10.     As for the transferee court, LPG requests that the Panel centralize the MDL proceedings in the Southern District of Ohio, as this Court is the most appropriate transferee district. The Southern District of Ohio has presided over twenty (20) MDL proceedings to date. The Honorable Judge Edmund A. Sargus of that court is now presiding over the *Scarlett* case. Currently, the Southern District of Ohio presides over three (3) MDL proceedings, of which Judge Sargus presides over two (2). *See In re E.I. du Pone de Nemours and Company C-8 Personal Injury Litigation,* MDL No. 2433; *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesha Products Liability Litigation*, MDL No. 2846).[2]   Judge Sargus was also

---

[2]     See     https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-15-2022.pdf (*last visited November 22, 2022).*

responsible for, and oversaw, another MDL action that was terminated in 2008.[3]  The Southern District of Ohio has the resources to accept the transfer and consolidation of the Actions.  Further, Judge Sargus has the experience necessary to see through another MDL.

11.     Alternatively, the Northern District of Ohio is likewise a suitable transferee district.  The Northern District of Ohio has presided over 33 terminated MDL proceedings and is currently overseeing three (3) MDL actions.  The Honorable Jack Zouhary of that Court is now presiding over the *Sheffield* case and the Honorable James G. Carr is now presiding over the *Klaus* case.  Neither Judge is overseeing a currently pending MDL.  Both judges have MDL experience, however, in that Judge Zouhary has overseen one (1) MDL[4] and Judge Carr has overseen two (2) MDL proceedings.[5]

12.     Moreover, geographically speaking, transferring the Actions to the Southern District of Ohio (Columbus, Ohio) would serve as a convenient, centralized location for the parties and witnesses.  Ohio is also the location of LPG's nationwide counsel.  Counsel for three sets of plaintiffs in the Actions also are located in Columbus, Ohio.

13.     This motion is supported by the concurrently filed Brief in Support of LPG's Motion to Transfer, the Schedule of Actions, and the copies of the docket sheets and pending complaints in each of the Actions.  LPG has informed all parties of its intent to file this motion. *Eaton* did not indicate her position.  *Beech* indicated that she would not be willing to do anything that is likely to delay discovery, and she did not indicate her position after a request for

---

[3] *See* https://www.jpml.uscourts.gov/sites/jpml/files/JPML%20FY%202021%20Report%20Cumulative%20Terminated%20MDLs.pdf (*last visited November 22, 2022*).

[4] *In re Polyurethane Foam AT*, MDL No. 2196.

[5] *In re Commercial Money Center, Inc., Equipment Lease*, MDL No. 1490; *In re Heparin PL*, MDL No. 1953.

clarification. *Topp*, *Rizo*, and *Graham* indicated they oppose MDL, but that they would be "open to a discussion about the informal coordination of discovery." *Hammett* indicated that he opposes the MDL Motion, is willing to discuss informal discovery, further indicating that he is not inclined to agree to "coordinate with Plaintiff's lawyers at other firms across the country." *Williamson* indicated that she would oppose the MDL, further advising that at this time, she is not open to the informal coordination of discovery and scheduling with the other pending cases. *Klaus, Scarlett*, and *Sheffield* indicated that they do not anticipate opposing this Motion (subject to further review), and that they would be open to informal discovery and scheduling with the other pending cases.

WHEREFORE, LPG respectfully requests that the Panel transfer the Actions referenced in the Schedule of Actions to the Southern District of Ohio for centralization and consolidation before the Honorable Judge Sargus. Alternatively, LPG respectfully requests that the Panel transfer the Actions to the Northern District of Ohio.

Dated:  December 6, 2022.                    Respectfully submitted,

**LUPER NEIDENTHAL & LOGAN, LPA**

*/s/ Matthew T. Anderson*
_____
Christopher R. Pettit (OH Bar 0065694)
Matthew T. Anderson (OH Bar 0082730)
Kyle T. Anderson (OH Bar 0097806)
Kirsten M. Cox (OH Bar 102183)
1160 Dublin Road, Suite 400
Columbus, OH 43215
Phone : (614) 221-7663
Fax: 800-345-4948
Email: cpettit@LNLattorneys.com
Email: manderson@LNLattorneys.com
Email: kanderson@LNLattorneys.com
Email: kcox@LNLattorneys.com
*Attorneys for Defendant, The Litigation Practice Group, PC*

8